UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA

v.  No. 3:24-CR-48
   Varlan/Poplin

BARBARA MULLINS,
CHRISTOPHER MULLINS, and
CAMM CARE, LLC, d/b/a
   Patriot Homecare.

**BRIEF REGARDING THE RELEASE OF FUNDS
TO RETAIN COUNSEL FOR CAMM CARE, LLC**

Come the defendants, Barbara Mullins and Caleb Mullins, through counsel, and file this brief addressing the representation of CAMM Care, LLC. To ensure CAMM Care, LLC's Sixth Amendment right to counsel is honored, the government must release funds to allow CAMM Care, LLC, to retain counsel in this matter.

**I.     Introduction**

CAMM Care, LLC was incorporated in the State of Tennessee in April, 2014. CAMM Care, LLC was indicted in this action on May 15, 2024. Barbara Mullins and Christopher Mullins appeared, with separate counsel, for an Initial Appearance and Arraignment on June 13, 2024. Initially, undersigned counsel were appointed to represent Mr. and Mrs. Mullins, with the issue of representation for the corporation left undetermined. Ultimately, upon demand by the defendants the government agreed to release funds that had been seized from CAMM Care, LLC's bank accounts for the purpose of retaining individual counsel for Mr. and Mrs. Mullins. [Doc. 49].

CAMM Care, LLC is unrepresented and has not had an Initial Appearance in this matter. Although registered with the Tennessee Secretary of State, CAMM Care, LLC is defunct and has not done business since on or around May 1, 2024. The government has seized all cash and assets of the company. As such, the corporation is without resources to hire counsel.

## II. Right to Counsel

Federal Rule of Criminal Procedure 43(b) states, in relevant part, that an organizational defendant need not be present when the "organization is represented by counsel who is present." The government chose to indict CAMM Care, LLC, and has the ability to dismiss the business as a named defendant. In the event that the government elects not to dismiss the entity, CAMM Care, LLC, is entitled to be represented by counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. In *United States v. Human Services Associates, LLC*, 216 F.Supp.3d 841 (W.D. Mich. Oct. 21, 2016), the court addressed a corporation's right to counsel. The term "accused" is not limited to natural persons, rather it extends to corporations and limited liability companies. *Id. at 847, see United States v. NHML, Inc.*, 2000 WL 420683, *14 (6th Cir. April 12, 2000) ("A corporation does have a right to counsel which attaches after the corporation has been indicted." (citing, inter alia, *United States v. Rad–O–Lite of Philadelphia, Inc.*, 612 F.2d 740, 743 (3rd Cir. 1979)); *United States v. Unimex, Inc.*, 991 F.2d 546, 550 (9th Cir. 1993) ("[C]orporations have a right to counsel...."); *United States v. Thevis*, 665 F.2d 616, 645 n.35 (5th Cir. 1982) ("The [S]ixth [A]mendment guarantees apply generally to an 'accused'; a corporation which is a defendant at trial is an 'accused' within the meaning of the amendment and enjoys the protection afforded by it."); *see also United States v. Burk*, No. EP–14–CR–240, 2014 WL 2800759, *2 (W.D. Tex, June

18, 2014) ("[I]t is generally understood that 'the [Sixth Amendment's] guarantee of effective assistance of counsel applies to corporate defendants' as well as individuals." (quoting *Rad–O–Lite of Philadelphia, Inc.*, 612 F.2d at 743)).

After recognizing an organizational defendant's right to counsel, many courts have addressed the right to the appointment of counsel. The majority view appears to be that because an organizational defendant does not face imprisonment, there is no Sixth Amendment right to the appointment of counsel. *Human Services Associates, LLC*, 216 F.Supp.3d at 848 (citations omitted). Likewise, the Criminal Justice Act does not provide a statutory right to appointed counsel. *Id.* at 848-850. Courts that have addressed this issue uniformly rule that appointment of counsel under the CJA is limited to "natural" persons. *Id.* at 849[1].

Courts do have the inherent authority to appoint counsel for organizational defendants. *Id.* at 850, *see also United States v. Burk*, 2014 WL 2800759 *9-10 (W.D. Texas June 18, 2014) and *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 562-63 (3d Cir.1985). The inherent authority to appoint counsel, however, does not solve the problem of how to pay for the services of counsel. Fortunately, as set forth hereafter, prior litigation in this case reveals that there are untainted funds held by the government that can, and must, be released to pay for defense counsel.

---

[1] "[T]he benefits of the CJA are limited to natural persons. *See United States v. Hartsell*, 127 F.3d 343, 350 (4th Cir. 1997) ("[N]either the Sixth Amendment...nor the Criminal Justice Act provides that counsel must be appointed, at public expense, to represent a corporation in criminal proceedings." (citing *Unimex*, 991 F.2d at 550)); *United States v. Rocky Mountain Corp.*, 746 F.Supp.2d 790, 800 (W.D. Va. 2010) ("Congress has not provided for the expenditure of Criminal Justice Act funds for the defense of corporations." (citing *Hartsell*, 127 F.3d at 350)); *United States v. Rivera*, 912 F.Supp. 634, 637 (D.P.R. 1996) ("As it can be clearly determined, [the CJA] provides for the appointment of counsel and payment of legal representation on behalf of 'persons' not deemed to be corporate defendants."); *United States v. Burk*, 2014 WL 2800759, at *7–8 (citing three "contextual features" indicating a congressional intent to limit the appointment of counsel under the CJA to natural persons); *United States v. JB Tax Prof'l Serv's, Inc.*, No. 13–127, 2013 WL 6004047, *1 (E.D. La. Nov. 13, 2013) ("There is general consensus that CJA funds are not available to fund the defense of an indigent corporation." (citations omitted)); *see also In re Grand Jury Proceedings*, 469 F.3d 24, 26 (1st Cir. 2006) (Noting that the Federal Defender's Office, as "a creature of the [CJA] lacks the authority to represent corporate clients." (citing *Hartsell*, 127 F.3d at 350; *Unimex*, 991 F.2d at 550; *Rivera*, 912 F.Supp. at 637–38)); *United States v. Chan*, No. 14–cr–3662, 2015 WL 545544, *2 (S.D. Ca. Feb. 9, 2015) (denying appeal of magistrate judge's decision that a corporation cannot be appointed counsel under the CJA, noting that the decision was "consistent with the law, and reasonably based"). *Human Services Associates, LLC*, 216 F.Supp.3d at 849.

### III. Untainted Funds Are Available to Retain Counsel

The government may freeze assets pending trial where there is probable cause to believe that the property is forfeitable. *United States v. Monsanto*, 491 U.S. 600, 615 (1989). That determination requires that there be probable cause to believe "(1) that the defendant has committed an offense permitting forfeiture and (2) that the property at issue has the requisite connection to that offense." *Kaley v. United States*, 571 U.S. 320, 323-24 (2014) (citing *Monsanto*, 491 U.S. at 615, n.10). However, the "pretrial restraint of **legitimate, untainted assets** needed to retain counsel of choice violates the Sixth Amendment." *Luis*, 378 US at 10 (emphasis added).

In *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008), the court held that "the federal criminal forfeiture statute, 21 U.S.C. § 853, does not provide authorization for federal prosecutors to restrain substitute assets prior to entry of the order of forfeiture by the district court." "Substitute assets" is defined in § 853(p), and cited in Paragraph 95 of the Indictment.

> In sum, we hold that the district court correctly determined that 21 U.S.C. § 853 does not authorize the federal government to place restraints on substitute assets prior to conviction; we further hold that restraints may not be placed on substitute assets under 21 U.S.C. § 853 prior to the entry of the order of forfeiture.

*Parrett*, 530 F.3d at 432. *See also United States v. Coffman*, 574 F. App'x 541, 562-63 (6th Cir. 2014) ("The government's interest in substitute property – unlike its interest in tainted property – does not arise until (1) after the defendant's conviction and (2) the court determines the [tainted] property is out of the government's reach for a reason enumerated in [the statute]."); *United States v. Erpenbeck*, 682 F.3d 472, 477 (6th Cir. 2012) (relation-back clause extends only to tainted property).

In this case, the government's seizure of funds from the CAMM Care, LLC, accounts included substantial untainted funds that were seized as substitute assets. To date, the

government has seized approximately $5.7 million from the business account of CAMM Care, LLC. The government alleges that some of these seized funds represent proceeds from the indicted criminal conduct. However, the business account also included funds paid by BlueCare and private insurance payors for services provided to TennCare recipients. The government does not claim that these monies represent proceeds of illegal conduct. In fact, the government conceded that these monies were not part of its criminal investigation.[2] Moreover, the government does not allege that all of the seized DOL proceeds are tainted. Instead, upon information and belief, the government asserts that these monies represent substitute assets that are subject to forfeiture.

CAMM Care, LLC, d/b/a Patriot Homecare, has been a Medicare and Medicaid certified provider since 2018. That certification allowed Patriot Homecare to provide services to TennCare patients. BlueCare and other private insurance payors paid Patriot Homecare on a claims submitted basis for all homecare services provided to TennCare patients.

From January, 2023 through December, 2023, BlueCare and other payors paid Patriot Homecare approximately 224 times for services provided to TennCare and other patients. (Doc. 28, Exhibit 6).[3] During that time frame, TennCare and private payors paid Patriot Homecare $4,476,961.52. The average monthly payment was $373,080.13. From January 2023 through November 2023, the Department of Labor [DOL] paid Patriot Homecare $8,457,752.84 for the

---

[2] As evidence of this concession, on or about October 13, 2023, the government released approximately $129,500.00 to the movants. On or about October 23, 2023, the government released approximately $119,000.00 to the movants. This money represented revenue paid to CAMM Care, LLC, by BlueCare and other private insurance payors after the execution of the seizure warrants. This money was used to pay the operating expenses and overhead of the business. Money paid into the CAMM Care, LLC, bank account from BlueCare prior to the execution of the search warrant should be treated no differently by the Court.

[3] The first page of Exhibits 6, 8, and 10 is a summary exhibit of the monthly payments made by BlueCare to CAMM Care LLC d/b/a Patriot Homecare for that respective year. The summary is based on the bank records for CAMM Care LLC attached thereto for each respective year.

EEOIC program. (Doc. 28, Exhibit 7).[4] The average monthly payment from the DOL for the EEOIC program was $939,750.32. Based on these averages, TennCare and private payors accounted for more than 28% of Patriot Homecare's annual revenue in 2023.

From January, 2022 through December, 2022, BlueCare and others sent payments to Patriot Homecare approximately 240 times for services provided to TennCare and other patients. (Doc. 28, Exhibit 8). During that time frame, TennCare and others paid Patriot Homecare $3,987,563.09. The average monthly payment was $332,296.92. In that year, Patriot Homecare was paid $10,094,326.24 for the EEOIC program. (Doc. 28, Exhibit 9). The average monthly payment for the EEOIC program was $841,193.85. Based on these averages, in 2022, TennCare accounted for approximately 28% of Patriot Homecare's annual revenue.

From January, 2021 through December, 2021, Patriot Homecare was paid approximately 197 times for services provided to TennCare and other patients. (Doc. 28, Exhibit 10). During that time frame, TennCare and others paid Patriot Homecare $1,838,484.49. The average monthly payment was $153,207.04. In this same year, Patriot Homecare was paid $8,963,498.00 for the EEOIC program. (Doc. 28, Exhibit 11). The average monthly payment for the EEOIC program was $746,958.17. Based on these averages, in 2021, TennCare accounted for approximately 17% of Patriot Homecare's annual revenue.

Based on the revenue streams for Patriot Homecare over a three year period, payments from TennCare represented more than 25% of the total income generated. During that three year period, TennCare paid Patriot HomeCare $10,303,009.10. Using these calculations, it is reasonable to conclude that of the $5.7 million seized from the CAMM Care, LLC, operating account in October, 2023, at least $1,425,000 represented funds derived from services provided

---

[4] Exhibits 7, 9, and 11 are summary exhibits based on the monthly payments made by the DOL to CAMM Care d/b/a Patriot Homecare for the EEOIC program for that respective year. The summary is based on the bank records for CAMM Care, LLC in Exhibits 6, 8, and 10.

to TennCare patients. These funds are not part of the allegations set forth in the Indictment. There has never been any probable cause finding as to these funds. A limited portion of these untainted funds should be released to allow CAMM Care, LLC, to retain counsel of its choice.

## IV. Conclusion

For these reasons, therefore, the defendants assert that CAMM Care, LLC, is entitled to counsel and that there are lawful funds available to cover the expense of counsel.

Respectfully submitted on February 6, 2025.

s/ Robert R. Kurtz
Robert R. Kurtz
BPR No. 20832
625 Market Street, Ste. 901
Knoxville, TN 37902
865-522-9942
rrkurtz@gmail.com

s/ Jonathan D Cooper
Jonathan D. Cooper
BPR No. 016041
607 Market Steet., Ste 1100
Knoxville, TN 37902
865-524-8106
cooper@knoxdefense.com
